UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA MILLER,

       Plaintiff,                              Case No. 10-12579
                                                 HON. GEORGE CARAM STEEH

vs.

RWD TECHNOLOGIES, INC.,

       Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#5] WITHOUT PREJUDICE AND SETTING SCHEDULING CONFERENCE

### I. INTRODUCTION

On June 8, 2010, plaintiff, Melissa Miller, filed a complaint in the Oakland County Circuit Court, Pontiac, Michigan alleging that she was wrongfully discharged in January of 2010 in violation of an express and/or implied contract for just cause employment. Plaintiff claims that after numerous successes in her career defendant RWD Technologies Inc.'s founder informed her that she attained partnership status and that she had a job for life. Plaintiff alleges that despite the fact that she was adequately performing her job, defendant terminated her employment without just cause. On June 30, 2010, defendant timely removed the instant action pursuant to 28 U.S.C. §§ 1332 and 1441. Before the court is defendant's motion for summary judgment, which is the first responsive pleading to plaintiff's complaint.

## II. FACTUAL BACKGROUND

Defendant was founded in 1988 by Dr. Robert W. Deutsch and its mission is to assist U.S. based manufacturing companies regain competitive advantage in the global economy. Defendant has developed various products and services for its clients, which focus on improving worker productivity, product quality, and financial performance.

Plaintiff began her employment with defendant on May 16,1989 as an Administrative Assistant. In 1997, plaintiff was promoted to Manager of Engineering Services overseeing Chrysler related work. By 1999 plaintiff had been promoted through the ranks to the position of Executive Director, and by 2003, to the position of Division Director and eventually in 2005 she became the Vice President of Manufacturing and Automotive Solutions. Plaintiff's performance appraisals were always rated either "meets standards" or "exceeds standards." In 2007, plaintiff secured Rockwell Automotive (Rockwell) as a client for defendant. Plaintiff claims that as a result of her efforts and success at securing Rockwell, Dr. Deutsch offered her employment for life with defendant.

Defendant claims that in October of 2008 through December of 2009 the effects of the global recession caused a significant downturn in business, causing defendant to lay off approximately three hundred and sixty four (364) employees. *See* Def.'s Mot. for Summ. J., Ex. C, Aff. of Cynthia L. English. The layoffs resulted in a twenty-eight percent (28%) reduction in defendant's workforce. *Id.* Of the three hundred and sixty four (364) employees who were laid off, one hundred and three (103) were from plaintiff's Manufacturing and Automotive Sales Division which was reduced to eighty-six (86) employees after the lay offs in 2008 through 2009. *Id.* Defendant also imposed a wage freeze, closed and downsized offices, enacted a series of cost saving measures and was,

and still is, unable to fund its employee profit sharing plan due to the global recession.  *Id.*

By the end of 2009, defendant experienced a twenty-eight percent (28%) drop in revenue, with ten of defendant's thirteen business units suffering losses for the year.  *See* Def.'s Mot. for Summ. J., Ex. D, Aff. of Laurens MacLure, Jr.   Due to the drop in revenue, defendant's CEO, Laurens MacLure Jr., issued a directive to all business unit leaders that they needed to propose a strategy and budget for 2010 that stopped the losses, and allowed each unit to operate profitably.

Plaintiff's division was part of the North American Operations unit, which provides custom human capital improvement solutions to defendant's North American based clients to allow them to improve the performance of their workforce.  By the end of 2009, the North American Operations unit had six vice-presidents, including the plaintiff, who reported to Patricia R. Begley, the Executive Vice President.  *See* Def.'s Mot. for Summ. J., Ex. E. Four of these Vice Presidents directed the four geographic regional divisions which delivered defendant's core Enterprise Learning Solutions[1] offerings to its customers within the North American operations.  *Id.*  Plaintiff and David Dougherty directed non-geographic divisions delivering industry specific offerings. Plaintiff managed the Manufacturing and Automotive Solutions Division and Dougherty managed the Federal/Public Sector Division. *Id.*

Defendant has also offered evidence that plaintiff's and Dougherty's divisions experienced significant decreases in financial performance in recent years.  Specifically,

---

[1] Enterprise Learning Solutions provides consulting and learning solutions used to train and enhance the productivity of a customer's employees in the use of new processes, technology and software.  *See* Def.'s Mot. for Summ. J., Ex. F.

in plaintiff's division, Chrysler, its largest client, had previously generated approximately $22,000,000.00 in annual revenue, decreasing to $4,900,000.00 by 2009. *See* Def.'s Mot. for Summ. J., Ex. G., Aff. of Rebecca Lundgren. Chrysler once required one hundred (100) employees in plaintiff's division, by the end of 2009, only thirty-five (35) employees were needed. *Id.* The revenue from the second largest client in plaintiff's division, Rockwell, fell by more than twenty percent (20%) from the year 2008 to 2009. *Id.*

Ms. Begley prepared an assessment of the North American business unit in order to fulfill MacLure's profitability expectations. *Id.* Ultimately she determined that the most viable option was to restructure her organization. *Id.* She decided to restructure her two industry-specific segments, plaintiff's and Dougherty's divisions, and fold them into the existing regional organizational structure. *Id.* Specifically, plaintiff's division would no longer be a separate division but would take its place alongside the existing six national practice groups that had been established in early 2009. The national practice groups consisted of services that are sold by all the regional divisions. Additionally, Dougherty's Federal/Public Sector division was folded into the Southeast region, which had the District of Columbia as part of its territory. *Id.* Both plaintiff's and Dougherty's positions were eliminated as a result of Begley's reorganization of the North American business operations unit. *Id.* Plaintiff was let go on January 29, 2010.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See*

*Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence

supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

For purposes of this motion only, defendant does not contest plaintiff's contention that she had a contract of just cause employment with defendant. Defendant argues that there is no genuine issue for trial because plaintiff was laid off as part of a company wide economically motivated reduction in force, which constitutes 'just cause' under Michigan law.[2]

Plaintiff claims that her termination was not pursuant to a reduction in force and defendant's explanation is mere pretext. Plaintiff claims that Begley did not like her because she did not have a college degree and Begley wanted plaintiff out of the way so that another employee, Chris Davis, could be promoted. Plaintiff argues that she should have been offered another position as a just cause employee, as opposed to terminating her outright. Plaintiff claims her termination was handled differently than other executive employees and was carried out contrary to company policy.

"[A]n employee may have an enforceable right not to be terminated except for just cause, grounded in either an express oral or written contract or in legitimate expectations arising from an employer's policy statements." *McCart v. J. Walter Thompson*, 437 Mich. 109, 114; 469 N.W. 2d 284 (1991). "[B]ona fide economic reasons for discharge constitute 'just cause' under *Touissant*." *Id.* While "employers have the right to adjust their work

---

[2] This action is based on federal diversity jurisdiction. Michigan law therefore applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

forces in response to market forces and business necessity, []they may not use such claims as pretexts for discharges which would otherwise be subject to a just-cause attack by an employee." *Ewers v. Stroh Brewery Co.*, 178 Mich. App. 371, 379; 443 N.W.2d 504 (1989). "Where an employer alleges discharge for economic necessity and the employee presents evidence that the economic necessity was pretextual and that he was discharged for another reason, the 'question of just cause' is one of fact for the jury." *Id.*

In *Ewers*, the Michigan Court of Appeals concluded that the plaintiff, who had a just cause contract of employment, submitted "substantial proofs" contradicting the employer's claim that its financial condition necessitated the plaintiff's discharge. *Id.* at 375, 379. The *Ewers* plaintiff had a just-cause discharge contract with the defendant. *Id.* at 375. The Michigan Court of Appeals concluded that the issue of whether the defendant discharged the plaintiff because of economic necessity or for some other reason should be submitted to the jury. *Id.* at 379. The *Ewers* plaintiff presented the defendant's Form 10-K annual report which revealed "a pattern of positive net earnings and increased dividends over the 1980-82 period." *Id.* at 375-76. The Form 10-K also showed that the company had an increase in its salaried workforce over the same time period. *Id.* at 376. The court also relied on the fact that the "reduction in force was carried out with little or no advanced planning and with no study of its need or effect on the corporation . . . ." *Id.* Therefore, "there was substantial evidence produced by plaintiff to rebut defendant's economic necessity defense to create a jury question on the legitimacy of the defense." *Id.* at 379.

In *Stacey v. Providence Hospital*, no. 197099, 1997 WL 33339870 (Mich. App. Nov. 4, 1997), the Michigan Court of Appeals determined that the plaintiff had submitted sufficient evidence to create a question of fact as to whether the plaintiff was terminated

because of budget considerations or in order to terminate the plaintiff specifically. *Stacey,* 1997 WL 33339870, at * 1-2. Specifically the plaintiff had presented evidence that:

> [N]umerous employees were added to defendant's financial departments after his termination; that his duties were not eliminated, but were undertaken by other employees; that defendant created two new reimbursement analyst positions that had the same classification, title, job code and pay grade as plaintiff's position; that he was informed that other positions were eliminated as a means of terminating the persons who held them; that defendant did not follow its own procedure in eliminating his particular position; and that his supervisor had requested that he resign several months before choosing his position for elimination.

*Stacey,* 1997 WL 33339870, at * 1. In regard to the defendant-employer's procedure, the court relied on the fact that "defendant's policies in regard to job reassignment and preferential treatment status were part of plaintiff's contract. *Stacey,* 1997 WL 33339870, at * 2. Further, the plaintiff applied for numerous available positions for which he was qualified, but he was not interviewed for any of the jobs for which he applied. *Stacey,* 1997 WL 33339870, at * 2.

Plaintiff argues that Michigan law requires an employer to demonstrate economic reasons not only for eliminating a just-cause employee's position, but also for termination of the employee as an individual as well. Plaintiff claims that defendant had an obligation to provide her with alternative options to termination. Plaintiff relies on the Michigan Court of Appeals case of *McCart v. J. Walter Thompson,* 181 Mich. App. 611; 450 N.W. 2d 10 (1989) for this proposition. In *McCart*, the Michigan Court of Appeals reversed the trial court's grant of summary disposition to the defendant employer concluding that the plaintiff had submitted evidence that there were other job opportunities within the company. *Id.* at 617. The Michigan Court of Appeals concluded that:

> Although an economically motivated reduction in force is a defense to a wrongful discharge action, the employer must establish economic motivation to terminate the particular employee, as opposed to the employee's position, where the employee has a just cause contract and the employer has a reasonable alternative options for the employee within the organization.

*Id.* at 617-18.

Plaintiff concedes that the Michigan Supreme Court reversed the Michigan Court of Appeals, but argues that the Michigan Supreme Court left in tact the holding that an employer is required to show why it chose to eliminate the particular employee as opposed to the particular position when reasonable options for the employee existed within the company. However, plaintiff has cited no case law suggesting that this holding is the law in Michigan, and the court can find no cases endorsing the concept plaintiff advances here. In any event, even if this is controlling law, plaintiff has failed to come forward with any evidence that there were reasonable alternative options for her within the organization. Instead, plaintiff names other individuals within the organization whose positions plaintiff should have been given because they were at will employees. However, plaintiff has not provided admissible, evidentiary support for her contention that these employees had at will contracts of employment.

Overall, plaintiff presents insufficient evidence to support her theory that her termination was not the result of a reduction in force. Plaintiff relies on an October 2, 2007 Strategy and Organizational Announcement from MacLure which states that a Vice President of Human Resources , a Chief Technology Officer, and an International Vice President would be hired and a Chief Technology Officer position would be added. *See* Plf.'s Br., Ex. N. However, a strategy and organizational plan written in October of 2007

can hardly have any relevance to the company's economic situation in 2008 and 2009, prior to the global recession and Chrysler declaring bankruptcy in April of 2009. Indeed, this plan was drafted well before the company began to realize the downtown in the global economy and the effects it was having on its revenue. *See* Def.'s Reply Br., Ex. O, Aff. of Laurens MacLure.

Plaintiff asserts that defendant did not follow its own procedure at the time she was terminated. She states that when an executive employee was to be terminated or laid off that Vice Presidents would be contacted to see if there was a place in their division for the affected employee. Plaintiff claims that this was not done for her at the time it was determined her position would be terminated. Plaintiff provides no written policy establishing the existence of this practice. "Written statements by an employer of its personnel policies and procedures can give rise to contractual rights." *Stacey*, 1997 WL 33339870, at *2. Unlike the plaintiff in *Stacey*, where "defendant's policies with regard to job reassignment and preferential placement were in writing and were part of plaintiff's contract[,]" plaintiff has provided no documentation demonstrating that defendant had a written policy concerning job reassignment and preferential placement for just-cause employees. *Id.*

Lastly, plaintiff contends that a complaint, lodged against her by an anonymous employee just prior to her termination, demonstrates that defendant was attempting to pin plaintiff for a just cause termination because the Vice President who conducted the investigation, Cindy English found:

> Overall finding-there is insufficient evidence to support a recommendation to discharge. Recommend a PIP or PIP in conjunction with a reclassification; her role is currently not sufficient to support a VP classification.

*See* Plf.'s Br., Ex. P. Plaintiff was terminated two days later.

Taken as a whole, the evidence plaintiff has presented in an effort to rebut defendant's economic necessity defense is insufficient. Plaintiff's evidence does not rise to the level of the "substantial proofs" that created a genuine issue for trial in the *Ewers* and *Stacey* cases on the issue of whether the defendant's economic necessity defense was pretext. However, at this stage of the proceedings this cannot be considered unusual. At the hearing, plaintiff argued that dismissal of her complaint under Rule 56 at this stage of the proceedings would be unfair because she was faced at the outset with a motion for summary judgment and has had no opportunity to obtain discovery. Although plaintiff's counsel has not strictly complied with Rule 56 (d), in her oral presentations, she did specifically point out anticipated factual development that discovery would provide to counter the defendant's proffers. The court agrees with plaintiff that she should not be precluded from conducting discovery given the fact intensive nature of defendant's motion. While there are compelling facts to support defendant's economic necessity defense, it remains possible for plaintiff to establish pretext. This case involves a fact intensive inquiry and plaintiff should have the opportunity to acquire discovery. Defendant may renew the motion for summary judgment following discovery.

## V. CONCLUSION

Accordingly,

Defendant's motion for summary judgment [#5] is denied without prejudice.

Defendant shall file an answer to plaintiff's complaint within seven days from the date of this order.

The parties shall appear for a scheduling conference on November 18, 2010 at 3:00

p.m.

SO ORDERED.

Dated: October 21, 2010

                        S/George Caram Steeh
                        GEORGE CARAM STEEH
                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 21, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---